UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 16-cr-104 (SRN/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tong Moua, | |
| Defendant. | |

Melinda A. Williams and Kevin S. Ueland, Assistant United States Attorneys, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

James S. Becker, Assistant Federal Defender, Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, (ECF No. 23). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

A hearing was held on June 10, 2016. Assistant United States Attorney Melinda A. Williams appeared on behalf of the United States of America (the "Government"). Assistant Federal Defender James S. Becker appeared on behalf of Defendant Tong Moua. The Government submitted a Minnesota state court search warrant, (ECF No. 25-

1), and the parties agreed the Court would undertake a "four-corners" review of the warrant. Post-hearing briefing is complete and the motion is ripe for a determination by the Court. Based upon all the files, records, and proceedings herein, the undersigned recommends that Defendant's motion to suppress be denied.

I. MOTION TO SUPPRESS

    A. Legal Standard

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The Fourth Amendment requires that search warrants be supported by probable cause." *United States v. Tripp*, 370 F. App'x 753, 757 (8th Cir. 2010) (citation omitted). "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (quotation omitted); *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). The sufficiency of the affidavit is evaluated using a totality-of-the-circumstances approach. *United States v. Augustine*, 663 F.3d 367, 372 (8th Cir. 2011). "Probable cause requires only a showing of fair probability, not hard certainties." *Hudspeth*, 525 F.3d at 676 (citing *Gates*, 426 U.S. at 213).

2

> When the issuing court relies solely on an affidavit to establish probable cause, only the information found within the four corners of the affidavit may be considered. The affidavit must provide the issuing court with a substantial basis to support a finding of probable cause; wholly conclusory statements that the affiant "has cause to suspect and does believe that" illegal activity is occurring "will not do." The affidavit for a search warrant should be examined using a common-sense, non-technical approach. Courts look to the totality of the circumstances to determine whether information provided by a confidential informant is reliable so as to support a finding of probable cause.

*Tripp*, 370 F. App'x at 757 (internal quotations and citations omitted). "A reviewing court should afford great deference to the probable cause determination of the issuing judge." *Tripp*, 370 F. App'x at 757 (citing *Hudspeth*, 525 F.3d at 674).

### B. The State Court Warrant

On March 1, 2016, Ramsey County, Minnesota Judge Shawn Bartsh issued a search warrant for 18XX Mechanic Avenue East, Apartment 4, in St. Paul, Ramsey County, Minnesota[1] based upon a finding of probable cause that items related to several bank robberies, including clothing worn by the suspect, currency taken, a possible handgun, electronic storage devices, and handwritten robbery notes, would be found at that residence. (ECF No. 25-1, at 1–4). Specifically, the affidavit detailed clothing worn during bank robberies in St. Paul on August 29, 2015 at TCF Bank, November 23, 2015 at TCF Bank, December 28, 2015 at Bremer Bank, and January 28, 2016 at Bremer Bank. (ECF No. 25-1, at 1).

The affidavit states that on March 1, 2016, police were dispatched to a Wells Fargo bank located in Shakopee, Minnesota for a hold-up alarm and 911 call regarding an

---

[1] The affidavit and search warrant include the full number, but Defendant and the Government each use the redacted street number. The Court will use the redacted street number as well.

3

attempted robbery. (ECF No. 25-1, at 2). An employee of the bank informed police that the suspect fled in older Toyota four-door vehicle with Minnesota license plate 263CVA. (ECF No. 25-1, at 2). Shakopee police interviewed the teller who stated that an Asian male approached her and displayed a handwritten note on a half sheet of spiral notebook paper that said "Give me $10,000 in hundreds or I'll shoot." (ECF No. 25-1, at 2). The teller told the suspected robber that she had no cash, so the suspect quickly left the bank. (ECF No. 25-1, at 2). The suspect was wearing a dark or blue coat and a dark hat, had a dark leather wallet, he was 5'2" to 5'3" tall, brown eyes, and in his late 20s or early 30s. (ECF No. 25-1, at 2).

The vehicle with Minnesota license plate 263CVA was located at Mystic Lake Casino on March 1, 2016 at 7:44 a.m. (ECF No. 25-1, at 2). The person exiting the vehicle, as seen by surveillance video, was identified at Defendant Tong Moua via his Mystic Lake Casino player club card. (ECF No. 25-1, at 2). Defendant left the casino at 8:25 a.m. in the same vehicle. (ECF No. 25-1, at 2). St. Paul Police Officer John Sherwood, through an image Shakopee police sent of the suspected bank robber, identified the suspect as Defendant, indicated Defendant's girlfriend owned the vehicle with Minnesota license plate 263CVA, and confirmed that Defendant was the previous registered owner of that vehicle. (ECF No. 25-1, at 2).

Later that morning, a Charter Bank in Chaska, Minnesota was robbed using a note. (ECF No. 25-1, at 2). The suspect, wearing a dark baseball cap with the letters "NYC" and a dark zip-up jacket, fled with approximately $5,000 cash. (ECF No. 25-1, at 2). The

suspect's vehicle, with Minnesota license plate 263CVA, was left at the bank.[2] (ECF No. 25-1, at 2).

Affiant, St. Paul Police Sergeant Timothy Pinoniemi, indicated he was familiar with five recent bank robberies in St. Paul, Minnesota. On August 29, 2015, a TCF Bank on Lexington Parkway was robbed by an Asian male, 20-25 years old, 5'4", 120-130lbs, who was wearing a white t-shirt, black hooded sweatshirt, navy baseball cap, jeans, and dark blue/black and white tennis shoes. (ECF No. 25-1, at 2–3). The suspect passed a note to the teller and fled with cash. (ECF No. 25-1, at 3).

On November 23, 2015, a TCF Bank on Suburban Avenue was robbed by an Asian male, 5'6", 160-200lbs, who was wearing white tennis shoes, jeans, black jacket with "Vikings" written on the back, and black hat with gray fur and folding ear flaps, and holding a small dark colored backpack. (ECF No. 25-1, at 3). The suspect passed the teller a note which said "Hand me all the clean cash or I will shoot you." (ECF No. 25-1, at 3). The note was taken by the suspect and the teller produced a bundle of cash totaling $3,400 in $50 and $100 bills. (ECF No. 25-1, at 3).

---

[2] In the affidavit, the vehicle from the first March 1, 2016 bank robbery is described first as "an older Toyota 4 door vehicle, MN license plate 263CVA." (ECF No. 25-1, at 2). The next reference to a vehicle in the affidavit is in relation to Mystic Lake Casino as "the suspect vehicle (MN-263CVA)" and "Moua left Mystic Lake at 0825 hours in MN-263CVA." (ECF No. 25-1, at 2). The next reference is to the ownership investigation, calling it "the vehicle" when describing it as registered to Defendant's girlfriend and Defendant as the previous owner. (ECF No. 25-1, at 2). Finally, with respect to the second March 1, 2016 bank robbery, a vehicle is described as "[t]he suspect vehicle" that "was left at the scene (parked in an angled parking spot, backed in) on Walnut Street, immediately outside of the west door to the bank." (ECF No. 25-1, at 2). Given that the vehicle was referred to as "the suspect vehicle" followed by the license plate identifier, as well as the fact that no other vehicles were discussed in the affidavit and a single day was contemplated, the Court concludes it is reasonable to infer that "[t]he suspect vehicle" in relation to the second March 1, 2016 bank robbery is the same vehicle identified as MN-263CVA, registered to Defendant's girlfriend and previously owned by Defendant.

5

On November 27, 2015, the same TCF Bank on Suburban Avenue was robbed by an Asian male, 25-30 years old, and wearing a black doo-rag, black hooded sweatshirt, dark blue jeans, and white shoes. (ECF No. 25-1, at 3). The suspect, with a hand inside his pocket implying a handgun was present, gave the teller a note that said "Give me all your clean bills or I will kill you." (ECF No. 25-1, at 3). The teller gave the suspect the money from her drawer and slipped a GPS in with the money. (ECF No. 25-1, at 3).

On December 28, 2015, a Bremer Bank on Snelling Avenue was robbed by an Asian male, 5'3" tall, slender build, and wearing eye glasses, dark colored hat, black jacket with writing on the left chest that says "ENJCE," black pants, and black wool gloves. (ECF No. 25-1, at 3). The suspect told the teller to be quiet and handed him a note that said "hand over money or I shoot." (ECF No. 25-1, at 3). The suspect had one of his hands inside of his jacket as if holding a gun. (ECF No. 25-1, at 3). The teller placed the contents of his drawer, $7,000 total, on the counter, and the suspect put the money into his pant pockets then left the bank. (ECF No. 25-1, at 3).

On January 28, 2016, the same Bremer Bank on Snelling Avenue was robbed by an Asian male, 5'2", who was wearing a dark blue hat, black jacket with a fur hood. (ECF No. 25-1, at 3). The suspect handed the teller a note demanding $15,000 and telling the teller not to touch the alarm or yell otherwise the teller would be killed. (ECF No. 25-1, at 3). The teller handed the suspect $1,100 in numbered bills and the remainder of the cash from the teller's drawer. (ECF No. 25-1, at 3).

Sgt. Pinoniemi attached to the search warrant application the surveillance photographs from each of these five bank robberies. (ECF No. 25-1, at 6–10). Upon

6

reviewing these surveillance photographs from the St. Paul bank robberies, Officer Sherwood recognized the suspect as Defendant. (ECF No. 25-1, at 3–4). Officer Sherwood indicated he had been at 18XX Mechanic Avenue East, Apartment 4, in St. Paul, Ramsey County, Minnesota on numerous occasions and that Defendant lives at that address with his girlfriend. (ECF No. 25-1, at 3–4). Sgt. Pinoniemi confirmed that Defendant was arrested by St. Paul Police on January 5, 2016, at which time he provided his address as 18XX Mechanic Avenue East, Apartment 4. (ECF No. 25-1, at 4).

The search warrant was then executed on March 1, 2016 at 18XX Mechanic Avenue East, Apartment 4. (ECF No. 25-1, at 5). Law enforcement recovered various clothing items appearing to match those worn by the suspect in the photographs, including black coats and sweatshirts, a black doo-rag, and a bomber hat with fur. (ECF No. 25-1, at 5).

### C. Analysis

In looking at the sufficiency of the affidavit, the affiant provided information that Defendant was the suspect in bank robberies spanning several cities. Defendant was tied to the bank robberies in Shakopee and Chaska on March 1, 2016 via a vehicle registered to his girlfriend. By reason of those bank robberies, St. Paul Police suspected Defendant of five other bank robberies. A St. Paul Police officer familiar with Defendant recognized him from the surveillance photos taken at the bank robberies. That same St. Paul Police officer knew Defendant resided at 18XX Mechanic Avenue East, Apartment 4. A check into police records showed Defendant himself provided that address as his residence only two months earlier. Under the totality of the circumstances, the affidavit presents

sufficient facts to lead a prudent person to believe there was a fair probability that evidence of a crime, several bank robberies in this instance, would be found 18XX Mechanic Avenue East, Apartment 4. *Hudspeth*, 525 F.3d at 674; *Augustine*, 663 F.3d at 372.

Defendant argues that there was no nexus linking 18XX Mechanic Avenue East, Apartment 4 to the bank robberies, and that because law enforcement made no attempts to verify the current occupants of the address, such as leasing documents, conversing with landlords or tenants, or surveillance to observe any actual residents, the affidavit accompanying the search warrant is rendered deficient. Defendant also argues that there is no evidence Defendant returned to 18XX Mechanic Avenue East, Apartment 4 after his alleged crimes. Defendant's arguments lack merit.

A vehicle belonging to Defendant's girlfriend was seen at the scene of two bank robberies on March 1, 2016.[3] Defendant was observed, via surveillance video at a casino, to have been driving the vehicle that same morning. Defendant himself told law enforcement in January 2016 that he was living at 18XX Mechanic Avenue East, Apartment 4. Moreover, Officer Sherwood had been at that address several times, interacting with Defendant and his girlfriend, who shared the residence. Thus, it is reasonable to believe that clothing—suspected to have been worn by Defendant during the alleged bank robberies—would be located at the residence where Defendant was

---

[3] Even if the inference discussed above, note 2 *supra*, were incorrect in that a different vehicle was left at the second bank robbery than the first bank robbery on March 1, 2016, Defendant was still tied to the MN-263CVA vehicle at the first bank robbery by reason of surveillance footage at Mystic Lake Casino. This is a sufficient link between Defendant and the vehicle to issue a search warrant for the first bank robbery on March 1, 2016. The same analysis applies even if the vehicle was only at the first bank robbery.

8

likely living. Further, Defendant indicated he was living there in January 2016, a date falling between the bank robberies ranging from August 29, 2015 to March 1, 2016. Based on the foregoing, the Court recommends Defendant's motion challenging the search warrant be denied.

### D. Good Faith Exception

Under *Leon*, the exclusionary rule is not to be "applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." *United States v. Taylor*, 119 F.3d 625, 629 (8th Cir. 1997) (citing *United States v. Leon*, 468 U.S. 897 905, 922 (1984)). "Evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Gibson*, 928 F.2d 250, 254 (8th Cir. 1991) (citing *Leon*, 468 U.S. at 921–23). "If a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an officer's reliance on the warrant cannot have been in good faith." *United States v. Goody*, 377 F.3d 834, 836 (8th Cir. 2004) (quoting *Leon*, 468 U.S. at 923). The Court's inquiry is confined "to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *Hudspeth*, 525 F.3d at 676 (quotation omitted).

Here, the Court cannot conclude that the affidavit was so lacking in indicia of probable cause as to render belief in the existence of probable cause to be unreasonable. Thus, to the extent that the search warrant contained any deficiencies as to probable

cause, these deficiencies are not apparent to this Court and would certainly not be reasonably apparent to any law enforcement officer executing the signed search warrant. Therefore, the good faith exception would render the exclusionary rule inapplicable in this case were it to be enforced.

## II.   RECOMMENDATION

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, (ECF No. 23), be **DENIED**.

Date:  July 27, 2016

                                      *s/ Tony N. Leung*
                                      Tony N. Leung
                                      United States Magistrate Judge
                                      District of Minnesota

                                      *United States v. Tong Moua*
                                      Case No. 16-cr-104 (SRN/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.