UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 16-104 (SRN/TNL) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Tong Moua, | |
| Defendant. | |

Melinda A. Williams and Kevin S. Ueland, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

James S. Becker, Assistant Federal Defender, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant

SUSAN RICHARD NELSON, United States District Judge

The above matter comes before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Tony N. Leung [Doc. No. 34] filed on July 27, 2016. Defendant timely filed Objections to the R&R [Doc. No. 37], to which the Government responded [Doc. No. 40]. Based upon the R&R of the magistrate judge, upon all of the files, records, and proceedings herein, the Court adopts the magistrate judge's recommendation and denies Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 23].

I.      BACKGROUND

A detailed recitation of the factual and procedural background of this case is found in the R&R, which the Court incorporates herein by reference. (See R&R at 1-7.)

Defendant was charged in the Indictment with one count of attempted bank robbery and one count of bank robbery, both in violation of 18 U.S.C. § 2113(a). (Indictment, Counts 1-2 [Doc. No. 12].) The attempted bank robbery charge relates to the March 1, 2016 attempted robbery of a Wells Fargo Bank in Shakopee. (Id., Count 1.) The bank robbery count concerns the March 1, 2016 robbery of $7,160 from the Charter Bank in Chaska, Minnesota. (Id., Count 2.)

Underlying Defendant's suppression motion is a March 1, 2016 search warrant. (Search Warrant, Affidavit & Return, Gov't Ex. 1 [Doc. No. 25-1].) The affidavit for the warrant, prepared by Sergeant Timothy Pinoniemi, stated that on March 1, 2016, members of the Shakopee Police Department were dispatched to a Wells Fargo Bank in Shakopee, Minnesota, in response to a 911 call of an attempted bank robbery. (Id. at 2.) A bank teller reported that an Asian male approached her with a note stating, "Give me $10,000 in hundreds or I'll shoot." (Id.) When the teller informed the bank robber that she had no cash, the robber quickly left the bank. (Id.) The teller provided a description of the suspect's approximate height, age, and eye color and stated that he was wearing a dark or blue coat and a dark hat. (Id.) An employee indicated that the suspect fled in an older Toyota four-door vehicle and provided the Minnesota license plate number. (Id.)

Shakopee Police sent out a teletype to area law enforcement agencies regarding the attempted robbery at the Wells Fargo Bank. (Id.) Security officers at the Mystic Lake Casino in nearby Prior Lake, Minnesota, contacted the Shakopee Police to report that the suspect vehicle had been seen that same day in the casino's parking lot. (Id.) From

2

parking lot surveillance video, casino personnel were able to identify the person exiting the vehicle, Defendant Moua, because he possessed a casino player club card.  (Id.)

Also on March 1, 2016, St. Paul Police Officer John Sherwood responded to the Shakopee Police Department's teletype because of similarities to recent bank robberies in St. Paul.  (Id.)   In the affidavit, the affiant described five bank robberies in St. Paul, occurring between August 2015 and January 2016, in which a young Asian male wearing a dark hat and dark colored jacket, used a note to conduct the robbery.  (Id.)  When the Shakopee Police Department sent Officer Sherwood a copy of the surveillance image of the Wells Fargo suspect, Sherwood identified the suspect as Tong Moua.  (Id.)  Officer Sherwood informed the Shakopee Police that Moua was the previous owner of the vehicle, a fact which Shakopee officers confirmed through vehicle records, but that the vehicle was now registered in the name of Moua's girlfriend.  (Id.)   Officer Sherwood also provided Shakopee Police with Moua's address, indicating that Moua lived with his girlfriend at 18XX Mechanic Avenue East, Apartment 4, in St. Paul, Minnesota.  (Id.)  Officer Sherwood "stated that he [had] been to the address of 18XX Mechanic apartment # 4 on numerous occasions.  He [had] talked with and identified Moua, who stated that he [was] living at this address with his girlfriend."  (Id. at 3.)

The affidavit also indicates that the St. Paul Police arrested Moua for an unnamed offense on January 5, 2016, at which time Moua provided the 18XX Mechanic Avenue address as his home address.  (Id. at 4.)

In addition, the FBI also participated in the investigation of the Wells Fargo

robbery. (Id. at 2.) According to the affiant, the FBI confirmed that Moua was a suspect in several recent bank robberies. (Id.)

Later in the morning of March 1, Shakopee officers received word that the suspect from the Wells Fargo attempted robbery had successfully robbed the Charter Bank in Chaska, Minnesota that same day. (Id.) The suspect was wearing a dark ball cap, emblazoned with "NYC," and a dark zip-up jacket, and passed a note to the teller. (Id.) The suspect fled with the scene with approximately $5,000 cash, leaving his vehicle behind. (Id.)

Upon Sergeant Pinoniemi's search warrant application and supporting affidavit, the search warrant was issued by the Hon. Shawn Bartsh of the Ramsey County District Court. (Id. at 4.) The warrant permitted officers to search at the 18XX Mechanic Avenue East apartment unit for specific articles of clothing worn during the bank robberies in the Twin Cities between August 2015 and January 2016. (Id. at 1.) In addition, the warrant authorized the seizure of currency, a weapon, electronic storage devices, and handwritten robbery notes. (Id.)

Following the execution of the warrant, Moua was detained and charged in this proceeding. Moua filed the underlying Motion to Suppress, seeking to suppress evidence obtained from the search warrant, alleging that the search and seizure violated the Fourth Amendment. (Mot. to Suppress at 1 [Doc. No. 23].) Moua asserts that the affidavit supporting the application for the search warrant lacked probable cause, as it failed to link the place to be searched with reports regarding a series of bank robberies. (See Def.'s

Obj. at 1.)

The magistrate judge found that a sufficient nexus existed to link the residence to the conduct. (R&R at 7-9.) Further, he found that even if there was an insufficient nexus, the good-faith exception applied. (Id. at 9-10.) Accordingly, he recommended the denial of Moua's suppression motion. (Id. at 10.)

In his Objections, Defendant re-argues the points made before the magistrate judge. Moua first contends that the affidavit failed to link the apartment to evidence of criminal activity, (Obj. at 3-4), and, second, that the warrant was so lacking in indicia of probable cause that a reasonably trained officer could not have relied upon it in good faith. (Id. at 4-6.)

## II. DISCUSSION

The district court must undertake an independent, de novo review of those portions of a R & R to which objection is made and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. LR 72.2(b)(3).

As noted, Defendant's first objection is that the search warrant for Defendant's residence was not supported by probable cause because the supporting affidavit fails to establish a nexus between the residence and the items sought in the warrant. (Obj. at 3-4.) He faults the officers for failing to verify that he had traveled to the Mechanic Avenue address since the robberies and with failing to provide information demonstrating that he still lived at that address. (Id.) The Eighth Circuit has summarized the standard for

5

evaluating the existence of probable cause in this context as follows:

> If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established. Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts. . . . The affidavit for a search warrant should be examined using a common sense approach, and not a hypertechnical one.

United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir.2008) (internal citations and quotation marks omitted).

Where the issuing judge "relied solely on the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Etheridge, 165 F.3d 655, 656 (8th Cir.1999) (quotation omitted).  The affidavit must establish a nexus between the item to be seized and the criminal conduct, Warden v. Hayden, 387 U.S. 294, 307 (1967), as well as a nexus between the item to be seized and the place to be searched.  Etheridge, 165 F.3d at 657 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence."  Id. (citing United States v. Christenson, 549 F.2d 53, 57 (8th Cir. 1977)).

Here, the affidavit recounts that Officer Sherwood, a St. Paul Police Officer familiar with Moua, identified Moua from the Wells Fargo surveillance footage.  (Gov't

Ex. 1 at 1.) Officer Sherwood knew that Moua resided in a particular apartment unit at 18XX Mechanic Avenue in St. Paul because the officer had visited the address "on numerous occasions." (Gov't Ex. 1 at 2-3.) The affidavit also states that Moua himself told Sherwood that he lived at that address, (id. at 3), and, in fact, supplied it as his home address when the St. Paul Police arrested him less than two months before the March 1 incidents. (Id. at 4.) Further, the affidavit provides that a vehicle registered to Moua's girlfriend, and previously registered to Moua, was observed at the scene of the Wells Fargo attempted bank robbery. (Id.) Surveillance footage from Mystic Lake Casino also showed Moua driving the same car. (Id. at 2.) The affidavit also provides details regarding clothing worn by the bank robber on March 1, 2016, as well as details concerning similar apparel worn by a suspect in five other recent bank robberies. (Id.) Based on the totality of the circumstances, including "the nature of the crime and the reasonable, logical likelihood of finding useful evidence," Etheridge, 165 F.3d at 657, the Court agrees with the magistrate judge that the affidavit set forth sufficient facts to lead a prudent person to believe that there was a fair probability that the sought-after items would be found at Defendant's residence. The warrant therefore established the requisite nexus to withstand scrutiny under the Fourth Amendment.

Moua also objects to the magistrate judge's finding that even if the warrant was not supported by probable cause, the good-faith exception in United States v. Leon, 468 U.S. 897, 919 (1984), would apply. (Obj. at 4-6.) In Leon, the Supreme Court addressed the Fourth Amendment exclusionary rule. Leon, 468 U.S. at 922-26. The Court held that

courts should not suppress evidence seized under the authority of a subsequently invalidated warrant unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23; see also United States v. O'Dell, 766 F.3d 870, 874 (8th Cir. 2014) (citation omitted).  However, the Court explained that this "good faith exception" to the exclusionary rule does not apply, and the evidence must be excluded, when the officer has no reasonable grounds for believing that the warrant was properly issued.  Leon, 468 U.S. at 923.  The Court identified the following four circumstances in which an officer's reliance on a warrant would be unreasonable:  (1) the issuing magistrate or judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate or judge "wholly abandoned his detached and neutral judicial role"; (3) "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) a warrant is so facially deficient, "i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  Id. (internal quotation marks omitted).

In his Objections, Moua appears to rely on the fourth exception in Leon, noted above, arguing that no reasonably trained officer could have relied on the warrant in good faith. (Obj. at 4-6.)  The Court rejects Moua's argument.  While Defendant cites United States v. Grant, 682 F.3d 827 (9th Cir. 2012), as persuasive authority, the Court finds that case very distinguishable and it is non-controlling authority.  In Grant, law enforcement

attempted to connect two potential suspects with a homicide. Id. at 828-31. The Ninth Circuit held that a search warrant for the residence of one of the two suspects could not have been relied upon in good faith, because no independent evidence connected the resident of the home, Grant, to the homicide and nothing suggested that the non-resident of the home, Davonte, had visited the residence after the homicide. Id. at 836. Here, the warrant contains no such attenuated facts. Rather, as discussed above, the warrant contains detailed information about the alleged criminal activity and Defendant's connection to that activity. The warrant affidavit demonstrates numerous connections between the two incidents on March 1, 2016: the license plate on the car used to flee the Wells Fargo robbery, the discovery that the car was registered in the name of Moua's girlfriend, the identification of Moua by Mystic Lake Casino employees, who observed Moua driving the same car, the identification of Moua in the Wells Fargo surveillance footage by Officer Sherwood Rather, Sherwood's familiarity with Moua's home address, Sherwood's knowledge that Moua lived with his girlfriend at that address, and Moua's own use of the address as his home address when he was arrested less than two months earlier. The warrant is therefore sufficiently supported by probable cause. Moreover, the warrant was relied upon by law enforcement in good faith. For all of these reasons, the Court agrees with the magistrate judge that even if the warrant lacked probable cause, the good-faith exception applies.

IT IS HEREBY ORDERED that:

1. Magistrate Judge Leung's R&R of July 27, 2016 [Doc. No. 34] is **ADOPTED**;

2. Defendant's Objections [Doc. No. 37] to the R&R are **OVERRULED**; and

3. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 23] is **DENIED**.

Dated: September 2, 2016

s/Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States District Judge